1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  DIANE PATTON,                  )   Case No. EDCV 04-1030 (JTL)
                                   )
12                 Plaintiff,      )
                                   )
13            v.                   )   MEMORANDUM OPINION AND ORDER
                                   )
14  JO ANNE B. BARNHART,           )
    Commissioner of Social         )
15  Security,                      )
                                   )
16                 Defendant.      )
    _____)

17

18       On August 21, 2004, Diane Patton ("plaintiff") filed a Complaint

19  seeking review of the Commissioner's denial of plaintiff's application

20  for social security disability benefits.  On September 28, 2004, the

21  parties filed a Consent to Proceed Before United States Magistrate

22  Judge Jennifer T. Lum.  Thereafter, on April 22, 2005, defendant filed

23  an Answer to Complaint.  On July 25, 2005, the parties filed their

24  Joint Stipulation.

25       The matter is now ready for decision.

26  ///

27  ///

28  ///

1                              **BACKGROUND**

2        On September 18, 2000, plaintiff filed an application for social

3    security disability benefits.  (Administrative Record ["AR"] at 49-

4    61).   In her application, plaintiff claimed that, beginning on

5    September 1, 1999, her schizophrenia and major depression prevented

6    her from working.  (AR at 53).   The Commissioner denied plaintiff's

7    application for benefits both initially and upon reconsideration.  (AR

8    at 384, 389).   On or about June 13, 2001, plaintiff requested a

9    hearing before an Administrative Law Judge ("ALJ").  (AR at 34).

10       On September 30, 2002, the ALJ conducted a hearing in San

11   Bernardino, California.  (AR at 395-422).  Plaintiff appeared at the

12   hearing with counsel and testified.  (AR at 397-403, 415-17).  Joseph

13   Malancharuvil, M.D., a medical expert, testified and examined

14   plaintiff.  (AR at 403-15, 418-19).  Corinne J. Porter, a vocational

15   expert, also testified.  (AR at 419-21).

16       On October 31, 2002, the ALJ issued his decision denying

17   benefits.  (AR at 14-19).   In his decision, the ALJ found that the

18   medical evidence established that plaintiff suffered from the

19   following severe impairments: low back pain, affective disorder, and

20   substance addiction disorder.  (AR at 17).   According to the ALJ,

21   however, these impairments did not meet or equal any of the criteria

22   contained in the Commissioner's Listing of Impairments, 20 C.F.R.

23   Section 404, Subpart P, Appendix 1.  (Id.).   The ALJ also found that

24   plaintiff retained the residual functional capacity to perform light

25   work not involving fast paced environments or hypervigilance.  (Id.).

26   Such jobs include plaintiff's past relevant work as a secretary,

27   ///

28   ///

1  typist, or general clerk.  (AR at 18).  Ultimately, the ALJ found that

2  plaintiff was not disabled pursuant to the Social Security Act.  (AR

3  at 18).

4      On November 14, 2002, plaintiff filed a timely request with the

5  Appeals Council for review of the ALJ's decision.  (AR at 9-10).  Upon

6  review of plaintiff's request, the Appeals Council affirmed the ALJ's

7  decision.  (AR at 4-6).

8

9                      **PLAINTIFF'S CONTENTIONS**

10     Plaintiff  makes  the  following  claims  in  the  parties'  Joint

11  Stipulation:

12     1.   The  ALJ  failed  to  properly  consider  the  opinion  of

13  disability by plaintiff's treating physician.

14     2.   The  ALJ  failed  to  appropriately  consider  the  assessment

15  completed by plaintiff's treating therapist.

16

17                        **STANDARD OF REVIEW**

18     The Court reviews the ALJ's decision under 42 U.S.C. § 405(g) to

19  determine  whether  the  ALJ's  findings  are  supported  by  substantial

20  evidence and whether the proper legal standards were applied.  DeLorme

21  v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence

22  means  "more  than  a  mere  scintilla"  but  less  than  a  preponderance.

23  Richardson  v.  Perales,  402  U.S.  389,  401  (1971);  Desrosiers  v.

24  Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir.

25  1988).

26     Substantial evidence is "such relevant evidence as a reasonable

27  mind might accept as adequate to support a conclusion."  Richardson,

28  402 U.S. at 401.  This Court must review the record as a whole and

1  consider adverse as well as supporting evidence.  <u>Green v. Heckler</u>,

2  803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible

3  of more than one rational interpretation, the ALJ's decision must be

4  upheld.  <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1452 (9th Cir. 1984).

5

6                          **DISCUSSION**

7  **A.   <u>The ALJ's Rejection of Plaintiff's Treating Physician's Opinion</u>**

8        Plaintiff contends that the ALJ failed to properly consider the

9  opinion of plaintiff's treating physician, Nader Oskooilar, M.D.

10  Plaintiff argues that Dr. Oskooilar's opinion that plaintiff lacks the

11  ability to maintain a sustained level of concentration, sustain

12  repetitive tasks for an extended period, and adapt to new or stressful

13  situations precludes plaintiff from employment.

14        An ALJ should afford less weight to a non-examining physician's

15  opinion than to a treating physician's opinion.  <u>See</u> <u>Pitzer v.</u>

16  <u>Sullivan</u>, 908 F.2d 502, 506 n.4 (9th Cir. 1990)("[T]he conclusion of

17  a non-examining physician is entitled to less weight than the

18  conclusion of an examining physician.").  Standing alone, a non-

19  examining physician's opinion cannot constitute substantial evidence

20  to reject a treating physician's opinion.  <u>See</u> <u>Lester v. Chater</u>, 81

21  F.3d 821, 831 (9th Cir. 1996) ("The opinion of a nonexamining

22  physician cannot by itself constitute substantial evidence that

23  justifies the rejection of the opinion of either an examining

24  physician <u>or</u> a treating physician.") (<u>emphasis</u> <u>in</u> <u>original</u>).  In order

25  to reject the testimony of a treating physician in favor of a non-

26  examining physician, the ALJ must give specific, legitimate reasons

27  that are supported by substantial evidence in the record.  <u>Id.</u>

28  (quoting <u>Roberts v. Shalala</u>, 66 F.3d 179, 184 (9th Cir. 1995)).

1   Furthermore, "where the opinion of the claimant's treating physician

2   is contradicted, and the opinion of a nontreating source is based on

3   independent clinical findings that differ from those of the treating

4   physician, the opinion may itself be substantial evidence; it is then

5   solely the province of the ALJ to resolve the conflict."  <u>Andrews</u>, 53

6   F.3d at 1041.

7        Plaintiff received treatment from the Riverside County Department

8   of Mental Health from August 22, 2000 to February 27, 2001.  (AR at

9   170-201).  On September 20, 2000 and February 27, 2001, Dr. Oskooilar

10  prepared Narrative Reports that detailed plaintiff's treatment and

11  rendered diagnoses.  (AR at 172, 184).  In the September 20, 2000

12  Report, Dr. Oskooilar diagnosed plaintiff with "schizo affective

13  disorder" and polysubstance abuse/dependence with a chronic prognosis.

14  (AR at 184).  Dr. Oskooilar opined that plaintiff had mildly impaired

15  memory, moderately impaired judgment, and evidence of confusion,

16  phobias, depression anxiety, panic episodes, and decreased energy.

17  (<u>Id.</u>).   He further opined that while plaintiff could interact

18  appropriately with others, he could not maintain a sustained level of

19  concentration, sustain repetitive tasks for an extended period, adapt

20  to new or stressful situations, or interact appropriately with others.

21  (<u>Id.</u>).  When asked whether plaintiff could complete a 40-hour work

22  week without decompensating, Dr. Oskooilar opined that the answer was

23  "unknown."  (<u>Id.</u>).  He also noted that plaintiff needed to stay sober

24  for a month before he could determine the extent of her psychiatric

25  condition.  (<u>Id.</u>).

26       In the February 27, 2001 Narrative Report, Dr. Oskooilar

27  diagnosed plaintiff with schizo affective disorder with a chronic

28  prognosis.  (AR at 172).  He opined that plaintiff suffered from

1  mildly impaired memory, moderately impaired judgment, and evidence of

2  confusion, depression, anxiety, compulsive behaviors, and low social

3  interest.  (AR at 172).   While he determined that plaintiff could

4  complete a 40-hour work week without decompensating, sustain

5  repetitive tasks for an extended period of time, and interact

6  appropriately with others, Dr. Oskooilar opined that plaintiff could

7  not maintain a sustained level of concentration or adapt to new or

8  stressful situations.     (Id.).   Dr. Oskooilar never opined that

9  plaintiff was incapable of working; in fact, in his most recent

10 Narrative Report he found that plaintiff was capable of working a 40-

11 hour work week without decompensating.   (AR at 172, 184).   This

12 opinion is consistent with the ALJ's decision that plaintiff could

13 perform light work[1] and is supported by other evidence in the record

14 as well.

15     A Disability Determination Services physician, Ed O'Malley, M.D.,

16 found that plaintiff had persistent psychotic features and

17 deterioration.  (AR 204-21).  Dr. O'Malley, a board certified

18 psychiatrist, found that plaintiff was moderately limited in her

19 ability to understand and remember detailed instructions, carry out

20 detailed instructions, maintain attention and concentration for

21 extended periods, and accept instructions and respond appropriately to

22 criticism from supervisors.  (AR at 218-19).  Dr. O'Malley found that

23 plaintiff was not significantly limited in all other areas, including

24 ───────────────────────

25     [1] "Light work" is defined as work which requires lifting up
    to 20 pounds at a time, with frequent lifting or carrying of
26  objects weighing up to 10 pounds, walking or standing for
    substantial periods or time, or sitting for substantial periods
27  of time with some pushing and pulling of arm or leg controls that
    require greater exertion than a sedentary job requires.   20
28  C.F.R. §§ 404.1567(b), 416.967(b).

6

the ability to understand and carry out short and simple directions, the ability to sustain an ordinary routine without supervision, the ability to work in proximity to others without being distracted by them, and the ability to make simple, work-related decisions. (Id.). He concluded that plaintiff retained the functional capacity to sustain simple repetitive tasks with adequate pace and persistence and adapt and relate to coworkers and supervisors. (AR at 220). Dr. O'Malley also determined that plaintiff should avoid work with the public. (Id.).

Two State Agency physicians reviewed plaintiff's treatment records regarding her mental impairments. On March 16, 2001, H.N. Hurwitz, M.D., found plaintiff to be credible and her complaints supported by objective findings. (AR at 237). Dr. Hurwitz concluded that a favorable prognosis could still be anticipated. (Id.). On May 23, 2001, a second State Agency physician, Thu N. Do, M.D., reviewed plaintiff's treatment records and assessed occasional postural limitations, no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations. (AR at 245-52). Dr. Do concluded that plaintiff could occasionally lift or carry 20 pounds, frequently lift or carry ten pounds, stand or walk for a total of six hours in an eight hour workday, sit for a total of six hours in an eight hour workday, and push or pull without limitation. (AR at 246).

Finally, at the hearing, Dr. Malancharuvil, a medical expert who had reviewed plaintiff's treatment records, testified that plaintiff suffers from the medically determinable impairment of depressive disorder and, until September of 2001, suffered from substance addiction disorder involving drug and alcohol abuse. (AR at 403-15,

7

1 | 418-19).   Dr. Malancharuvil determined that plaintiff should avoid

2 | jobs that are fast paced or require hypervigilence, and restricted her

3 | to moderately complex tasks.  (Id.).

4 | Thus, it appears that plaintiff's treating physician, a

5 | Disability Determination Services psychiatrist, two State Agency

6 | physicians, and a medical expert all opined that plaintiff retained

7 | the mental capacity to work.  It was plaintiff's treating physician

8 | who most recently determined that plaintiff was capable of working a

9 | 40-hour work week without decompensating.  (AR at 184).  Four other

10 | physicians rendered similar opinions.  (AR at 237, 245-52).

11 | The ALJ ultimately determined that plaintiff was able to perform

12 | light work, but suggested that plaintiff avoid fast paced environments

13 | and jobs requiring hypervigilance.  (AR at 17).  Dr. Oskooilar

14 | determined that plaintiff could complete a 40-hour work week without

15 | decompensating, sustain repetitive tasks for an extended period of

16 | time, and interact appropriately with others.  (AR at 172).  Dr.

17 | Oskooilar's opinion was not inconsistent with the ALJ's conclusions,

18 | as both opined that plaintiff could perform similar work.  Therefore,

19 | plaintiff's claim that the ALJ failed to consider Dr. Oskooilar's

20 | opinion must be rejected.

21 |

22 | **B.    The ALJ's Consideration of the Treating Therapist's Assessment**

23 | Plaintiff claims that the ALJ erred in failing to appropriately

24 | consider the assessment of Janice Hilton, Licensed Clinical Social

25 | Worker, who rated plaintiff's dysfunction as severe.  (AR at 331).

26 | Plaintiff argues that the ALJ's failure to consider Ms. Hilton's

27 | assessment in his decision constitutes error.

28 | Generally, a social worker's opinion is not an "acceptable

8

1  source" of medical evidence unless the social worker acts as an agent
2  of a licensed physician or psychologist.  <u>See</u> <u>Gomez v. Chater</u>, 74 F.3d
3  967, 970-71 (9th Cir. 1996); 20 C.F.R. §§ 404.1513(a).  Thus, in order
4  to qualify as an acceptable source, a social worker must act so
5  "closely under the supervision" of a treating physician that the
6  social worker's opinion should be "properly considered as part of the
7  opinion" of the treating physician.  <u>See</u> <u>Gomez</u>, 74 F.3d at 971.  In
8  <u>Benton v. Barnhart</u>, the Ninth Circuit found that a report of an
9  interdisciplinary team that contained the evaluation and signature of
10 an acceptable medical source is also considered acceptable medical
11 evidence.  <u>See</u> <u>Benton v. Barnhart</u>, 331 F.3d 1030, 1039 (9th Cir. 2003)
12 ("[Dr.] Zwiefach is transmitting both his own knowledge and opinion of
13 Benton and those of the medical treatment team under his supervision
14 . . . nothing in the language of § 404.1502 forecloses his doing so on
15 behalf of his treatment team.").

16     Here, the record contains insufficient facts to establish that
17 Ms. Hilton was an acceptable source of medical evidence.  The record
18 does not indicate that Ms. Hilton actively consulted with any treating
19 physician throughout the course of plaintiff's treatment or that she
20 acted on a treating physician's behalf in assessing plaintiff's
21 dysfunction rating.  To be sure, several of plaintiff's subsequent
22 progress notes at the San Bernardino County Department of Behavioral
23 Health bear the signatures of Donna Barrozo, M.D., Patricia J.
24 Prendergast, Ph.D., M.F.T., and Lisamarie Shelton, Ph.D., all of whom
25 qualify as treating physicians under 20 C.F.R. Sections 404.1513 and
26 416.913.  But nothing in the records show that Ms. Hilton worked
27 closely with or under Drs. Barrozo, Prendergast, or Shelton's
28 supervision.  <u>See</u> <u>Gomez</u>, 74 F.3d at 971 (finding nurse practitioner

9

1  acceptable source of medical evidence where chart notes demonstrated

2  that nurse practitioner worked under close supervision of, and

3  consulted with, acceptable medical source).  Accordingly, Ms. Hilton

4  was not an acceptable source of medical evidence.

5       The ALJ, therefore, committed no error in giving Ms. Hilton's

6  opinion little deference.  "An opinion from a person who is not an

7  'acceptable medical source' need not be afforded any deference by the

8  ALJ."  Bourbon v. Barnhart, 2002 WL 31855298, * 4 (N.D. Cal. Dec. 13,

9  2002) (stating that ALJ may freely reject opinion from source not

10 listed in acceptable sources of medical evidence) (citing Bunnell v.

11 Sullivan, 912 F.2d 1149, 1152 (9th Cir. 1990), rev'd en banc on other

12 grounds, 947 F.2d 341 (9th Cir.1991)).  The Court, therefore, rejects

13 plaintiff's second claim.

14

15                              **ORDER**

16      Based upon the foregoing, the Court AFFIRMS the decision of the

17 Commissioner of Social Security Administration.

18      **LET JUDGMENT BE ENTERED ACCORDINGLY**

19 DATED: October 4, 2005

20

21

22                                    _____/s/_____
                                      JENNIFER T. LUM
23                                    UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28